UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MILDRED A. NORTH, derivatively on behalf of CHEMED CORPORATION, | Case No.: 1:13-cv-833 |
| Plaintiff, | Judge Michael R. Barrett |
| v. | |
| KEVIN J. MCNAMARA, et al., | |
| Defendants, | |
| -and- | |
| CHEMED CORPORATION, | |
| Nominal Defendant. | |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C § 1404(a). (Doc. 13). Plaintiff has filed a memorandum in opposition (Doc. 22), and Defendants have filed a reply (Doc. 25). Defendants also have filed a notice of supplemental authority (Doc. 26) and Plaintiff has filed a response thereto (Doc. 27). This matter is now ripe for review.

**I.     SUMMARY OF BACKGROUND**

This is a shareholder derivative action brought by Plaintiff Mildred North, an Illinois resident, against nominal Defendant Chemed Corporation and Individual Defendants Kevin McNamara, David Williams, Timothy O'Toole, Joel Gemunder, Patrick Grace, Walter Krebs, Andrea Lindell, Thomas Rice, Donald Saunders, George Walsh III, Frank Wood, and Thomas Hutton. Plaintiff, derivatively on behalf of Chemed, asserts claims for breach of fiduciary duty,

1

abuse of control, gross mismanagement, unjust enrichment, and insider trading arising between February 2010 and the present in relation to the VITAS Innovative Hospice Care ("VITAS") segment of Chemed's business. (Doc. 1, PageID 1-2). Plaintiff contends that Individual Defendants caused VITAS to submit improper claims to Medicare and Medicaid. (*Id.*, PageID 17-25). Plaintiff further contends that Individual Defendants caused Chemed to make false and misleading statements to the investing public, and that Chemed was damaged when its stock plummeted and it was subjected to numerous lawsuits, including a lawsuit by the United States. Department of Justice and a securities-fraud class action in this Court. (*Id.*, PageID 49-94, 104).

Chemed is a corporation that is incorporated under the laws of Delaware with its principal place of business in Cincinnati, Ohio. (Doc. 1, PageID 1-2, 4). It is a publicly-traded company. (*Id.*, PageID 2). VITAS is a subsidiary of Chemed that is the largest provider of hospice services in the United States. (*Id.*). VITAS's principal place of business is Miami, Florida, but it operates in sixteen states, including Ohio and Delaware. (*Id.*, PageID 22). VITAS's largest markets are Florida and California. (*Id.*). Individual Defendants McNamara, Williams, Saunders, and Wood are residents of Ohio, Individual Defendants Grace and Walsh are residents of New York, Individual Defendant Rice is a resident of Maryland, Individual Defendants O'Toole and Gemunder are residents of Florida, Individual Defendant Lindrell is a resident of North Carolina, and Individual Defendant Krebs is a resident of Kentucky. (Doc. 14, PageID 498).[1]

---

[1] The Court may consider undisputed facts outside of the pleadings in deciding whether to transfer under § 1404(a). *See Price v. PBG Hourly Pension Plan*, 921 F. Supp. 2d 764, 772 (E.D. Mich. 2013). While the allegations as to the residences of the Individual Defendants in Plaintiff's Complaint differ from the information contained in the Cameron Declaration, Plaintiff argues in her reply brief that at least four of the Individual Defendants reside in Ohio. (Doc. 22, PageID 797, 809). The Court therefore proceeds with the understanding that at least four of the Individual Defendants indeed reside in Ohio.

Chemed's Certificate of Incorporation is dated March 26, 1970. (Doc. 14-3, PageID 561). It was filed on November 26, 1991 along with Form S-3. (Doc. 14, PageID 495). The Certificate of Incorporation provides, in pertinent part:

> In furtherance and not in limitation of the powers conferred upon the board of directors by statute, the board of directors is expressly authorized, without any vote or other action by stockholders other than such as at the time shall be expressly required by statute or by the provisions hereof or the by-laws, to exercise all of the powers, rights and privileges of the corporation (whether expressed or implied herein or conferred by statute) and do all acts and things which may be done by the corporation, including but not limited to, the authority to make, adopt, alter, amend and repeal from time to time by-laws of the corporation, subject to the right of stockholders entitled to vote with respect thereto to alter and repeal by-laws made by the board of directors.

(Doc. 14-3, PageID 559).

In 2010, Plaintiff purchased stocks in Chemed and has continuously been a shareholder since that time. (Doc. 24, PageID 834).

On August 2, 2013, Chemed amended its Bylaws to include Bylaw 8.07. (Doc. 14-1, Page ID 502, 528). Bylaw 8.07 states:

> Unless the corporation consents in writing to the selection of an alternative forum, a state or federal court located within the State of Delaware shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the corporation, (ii) any action asserting a claim for breach of a fiduciary duty owed by any director, officer or other employee of the corporation to the corporation or the corporation's stockholders, (iii) any actions asserting a claim arising pursuant to any provision of the Delaware General Corporation Law, the certificate of incorporation or the by-laws of the corporation or (iv) any action asserting a claim governed by the internal affairs doctrine, in each such case subject to such court having personal jurisdiction over the indispensable parties named as defendants therein.

(Doc. 14-1, PageID 528). On August 5, 2013, Chemed filed a Form 8-K that states, in part, that "[o]n August 2, 2013, [Chemed] amended its bylaws by adding a new section 8.07 which

3

provides Delaware courts are the exclusive forum for certain actions. The full text hereof is incorporated by reference." (Doc. 14-2, PageID 537).

On November 6, 2013, Plaintiff KBC Asset Management NV filed a shareholder derivative suit against certain Chemed officers and directors in the United States District Court for the District of Delaware. *KBC Asset Management NV., derivatively on behalf of Chemed Corp. v. McNamara, et al.*, No. 1:13-cv-1854, Doc. 1 (D. Del. Nov. 6, 2013). On November 14, 2013, Plaintiff filed this shareholder derivative suit against nominal Defendant Chemed and twelve Individual Defendants, all of whom were named as defendants in the Delaware action. (Doc. 1).

## II.     ANALYSIS

The parties dispute two issues: 1) the enforceability of Bylaw 8.07 and 2) whether the requested procedural remedy to transfer venue under 28 U.SC. § 1404(a) is appropriate. As these inquiries are distinct, the Court will consider them separately below.

### A.  Enforceability of Bylaw 8.07

The determination as to the enforceability of the forum-selection clause is governed by federal law. *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Generally, a "forum selection clause should be upheld absent a strong showing that it should be set aside." *Id.* In the Sixth Circuit, three considerations govern the enforceability determination: "1) whether the clause was obtained by fraud, duress, or other unconscionable means; 2) whether the designated forum would ineffectively or unfairly handle the suit; and 3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.* (citing *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999)); *see also Blissfield Mfg. Co. v. Blue H20 Solutions, LLC*, No. 12-15610, 2013 U.S. Dist.

LEXIS 140034, at *12 (E.D. Mich. Sept. 30, 2013) (recognizing that a forum-selection clause may not be enforceable under *Wong* if one of the three prongs is not satisfied). "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." *Wong*, 589 F.3d at 828 (citing *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995)).

Plaintiff makes three primary arguments as to why Bylaw 8.07 should not be enforced. First, she argues that she did not knowingly and willing consent to the bylaw. Second, she argues that the bylaw was adopted for an improper purpose. Third, she argues that forcing her to litigate in the United States District Court for the District of Delaware would be "seriously inconvenient." Each of those arguments is addressed below.

1. **Consent**

Plaintiff argues that Bylaw 8.07 should not be enforced because the shareholders did not knowingly and willingly consent to it. Plaintiff points to the statement of the Sixth Circuit in *Wong* suggesting that a forum-selection clause will not be enforced if the agreement to that clause was obtained unknowingly or unwillingly. *Wong*, 589 F.3d at 828. Plaintiff indicates that a forum-selection clause cannot be obtained with the knowing and willing consent of shareholders when it is adopted unilaterally by the board of directors after the shareholders purchased their shares, after the claims arose, and without notice. To support that position, Plaintiff relies on the non-binding opinions of the Northern District of California in *Galaviz v. Berg*, 763 F. Supp. 2d 1170 (N.D. Cal. 2011) and the Southern District of New York in *In re Facebook, Inc.*, 922 F. Supp. 2d 445 (S.D.N.Y. 2013).

While Defendants do not dispute that Bylaw 8.07 was adopted by the board without the shareholders' contemporaneous consent, Defendants contend that the board received the

5

necessary consent at the time Plaintiff purchased her shares because Plaintiff agreed to be bound by the Certificate of Incorporation that permitted the board to unilaterally adopt bylaws. In support, Defendants rely on the non-binding, but more recent, opinion of the Delaware Court of Chancery in *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, 73 A.3d 934 (Del. Ch. 2013). Defendants contend that in accordance with *Boilermakers*, Plaintiff's argument that the adopted bylaw lacked consent should not be given any weight. Moreover, Defendants argue that the shareholders received public notice of the bylaw amendment, which is proper and sufficient.

To properly address the arguments of the parties, the Court must first consider the three primary cases upon which they rely. The first of the three cases is *Galaviz*. In that case, the defendant-corporation was alleged to have engaged in an overbill scheme relating to its software sales. *Galaviz*, 763 F. Supp. 2d at 1171-72. In the midst of that scheme, the board of directors adopted a resolution amending the corporate bylaws to add a forum-selection provision. *Id.* at 1172. Recognizing that the case presented "a question of first impression, in that no court has previously ruled on the enforceability of a venue provision for derivative actions contained in corporate bylaws[,]" the court looked to federal standards for enforceability but measured the inequitable nature of the bylaw under contractual principles. *Id.* After discussing the interaction between corporate law and contract law, the district court concluded that the unilateral amendment to the bylaws, even if permitted under the corporate law, attempted to accomplish what the corporation could not do under general principles of contract law by unilaterally amending the contract. *Id.* at 1174. The district court summarized its conclusion as follows:

> Even when bringing a claim under a contract offered on a "take it or leave it" basis . . . a plaintiff can be said to have consented to the forum selection clause when he or she elected to enter into that contract.
>
> A bylaw unilaterally adopted by directors, however, stands on different footing. Particularly where, as here, the bylaw was adopted by the very individuals who are named as defendants, and after the alleged wrongdoing

6

> took place, there is no element of mutual consent to the forum choice at all, at least with respect to shareholders who purchased their shares prior to the time the bylaw was adopted. . . .

*Id.* at 1171. As such, the district court determined that it should not disregard the plaintiff's choice of forum. *Id.* at 1174.

After *Galaviz*, the Southern District of New York issued its decision in *In re Facebook*, 922 F. Supp. 2d 445. That case presented an issue distinct from that in *Galaviz*, as it involved the effective date of a forum-selection clause contained in the initial Certificate of Incorporation rather than the adoption of a bylaw. *Id.* at 451-52, 462-63. Moreover, the *In re Facebook* court determined that there had not been an impermissible unilateral adoption of the forum-selection clause. *Id.* at 463. Instead, the district court focused its attention on the fact that the Certificate of Incorporation did not become effective until after the plaintiff has purchased her shares in the initial public offering and after the claims at issue already has arisen. *Id.* Nonetheless, its holding that the shareholders were not bound by the forum-selection clause in the Certificate of Incorporation when they later filed lawsuits based on the earlier-arising claims appears to follow at least part of the reasoning of the *Galaviz* court.

Following *Galaviz* and *In re Facebook*, the Delaware Court of Chancery issued its decision in *Boilermakers*, 73 A.3d at 941-43, in which it granted a motion for judgment on the pleadings after upholding the statutory and contractual validity and enforceability of unilaterally-adopted forum-selection clauses in corporate bylaws. The defendants maintained that the adoption of a forum-selection clause in the bylaws was necessary to allow large corporations who are subject to multi-district litigation because of their distinct places of incorporation and places of business to consolidate their cases into one forum. *Id.* at 943-44. The plaintiffs argued that the bylaws were facially invalid under 8 Del. C. § 109(b). *Id.* at 938. The plaintiffs also argued that the forum-selection bylaws violated section 109 because they did not regulate

7

internal matters of corporate governance. *Id.* at 951. Rejecting the arguments of the plaintiffs, the court reasoned that the state laws allowed corporations to adopt rules to expedite the convenient functioning of business. *Id.* at 951. The court further determined that the forum-selection clauses regulated only where shareholders may file a lawsuit in certain matters, not whether they may file a suit at all, and noted that the shareholders have means of attacking bylaws that they find objectionable. *Id.* at 952, 954. Finally, the court rejected the plaintiffs' argument that the bylaws were invalid because they were unilaterally adopted by the board of directors. *Id.* at 955-58. Recognizing that the bylaws are part of a larger contractual framework between the shareholders and the corporation, the court relied on the fact that the shareholders are on notice in the certificates of incorporation and in Delaware law under which the corporations are organized that the board has the authority to unilaterally adopt bylaws that are subject to such regulation, including forum-selection clauses. *Id.* at 956-58. In reaching that conclusion, the court distinguished *Galaviz*, stating: "the conclusion reached . . . in *Galaviz* . . . – that board-adopted bylaws are not like other contracts because they lack the stockholders' assent—rests on a failure to appreciate the contractual framework established by the DGCL for Delaware corporations and their stockholders." *Id.* at 956. Accordingly, the court held that when shareholders "have authorized a board to unilaterally adopt bylaws, it follows that the bylaws are not contractually invalid simply because the board-adopted bylaw lacks the contemporaneous assent of the stockholders" and to find otherwise would contradict the plain terms of the contractual framework chosen by the shareholders. *Id.* at 956.[2]

---

[2] Although Plaintiff attempts to poke holes in *Boilermakers* on the basis that it did not address whether the amendment should have been through the certificate of incorporation where it provided shareholders with the opportunity to approve the clause, that attempt falls flat. While the *Boilermakers* court noted that the case did not involve a challenge to the legitimacy of the bylaw amendment as opposed to a certificate of incorporation amendment, it noted that even though the consequences thereof would be different it was a decision for the board to make in the first instance. *See Boilermakers*, 73 A.3d at 955 n. 93.

Having considered these cases and their progenies, the Court finds the reasoning set forth in *Boilermakers* to be the most persuasive on the issue of consent in this case, even though it was decided in a different procedural context.[3] As in *Boilermakers*, the shareholders of Chemed consented to the Delaware corporate framework by buying shares in a Delaware corporation and agreeing to the certificate of incorporation that allowed the board to unilaterally adopt bylaws.[4] The board acted in accordance with the contractual framework and the certificate of incorporation when it amended the bylaws to include the forum-selection clause. While the shareholders did not provide contemporaneous consent to the amendment, they previously chose to be bound by those bylaws adopted unilaterally by the board. Thus, contrary to the *Galaviz* court's reasoning, general contractual principles permitted the board to act as it did in this case and bound the shareholders to the bylaws adopted pursuant to that action. The fact that the shareholders are unsatisfied with the consequences of the application of the terms to which they agreed is an insufficient basis upon which to find the bylaw so inequitable that it should not be enforced. Nor does the fact that the shareholders were unable to negotiate for a specific forum negate the consent provided to the board to adopt such a bylaw. *See Carnival Cruise Lines v. Shute*, 499 U.S. 585, 588 (1991) (stating that a forum-selection clause can bind the parties even where the agreement in question is a form consumer contract that is not subject to negotiation).

---

[3] Others courts also have followed *Boilermakers*. *See, e.g., Melissa's Trust v. Seton*, No. 14 C 02068, 2014 U.S. Dist. LEXIS 104457, at *20 (N.D. Ill. July 31, 2014); *Groen v. Safeway, Inc.,* No. RG14716641, slip op., at 1-2 (Super. Ct. Cal., Alameda Cnty., May 14, 2014); *Miller v. Beam, Inc.*, No. 2014 CH 00932, Tr. of Oral Arg., at 38-47 (Ill. Cir. Ct. Mar. 5, 2014) (Doc. 25-1, PageID 898-907); *Katz v. CommonWealth REIT*, No. 24-C-13-001299, slip op., at 22-26 (Md. Cir. Ct. Feb. 19, 2014) (Doc. 25-2, PageID 943-46); *Genoud v. Edgen Grp., Inc.*, No. 625,244, slip. op. (La. Dist. Ct. Jan. 17, 2014) (Doc. 25-3, PageID 968; Doc. 25-4, PageID 975-85); *Hemg Inc. v Aspen Univ.*, No. 650457/13, 2013 N.Y. Misc. LEXIS 5199, at *5-6 (N.Y. Sup. Ct. Nov. 4, 2013).

[4] Although Plaintiff argues that state law has no application here, the Court disagrees. While the overall standard for enforceability is governed by federal law in this matter, it is necessary for the Court to consider the framework under which the bylaw was adopted to fully evaluate whether the circumstances of the case render the adoption inequitable or unjust. Moreover, the argument as to mutual consent intertwines the issues of contractual validity and enforceability, and the *Boilermakers* decision, like the *Galaviz* decision on which Plaintiff relies, considers general contractual principles in determining whether the shareholders provided the necessary consent to the bylaw amendment.

Plaintiff's additional arguments as to the lack of mutuality of agreement also fail to persuade the Court to set aside Bylaw 8.07. Plaintiff argues that she cannot be bound by Bylaw 8.07 because she purchased her shares before it was adopted. This, however, is simply a different way of saying that she did not provide contemporaneous consent to the bylaw. As discussed above, however, the Certificate of Incorporation in existence at the time Plaintiff purchased her shares specifically notified shareholders that they would provide the board authority to unilaterally bind them through the adoption of bylaws. The timing of the purchase of her shares thus is inconsequential. To hold otherwise would lead to inconsistent and contradictory rights and remedies for shareholders of the same company. The Court cannot condone that outcome.

Similarly, Plaintiff's argument that she did not receive notice and was unaware of Bylaw 8.07 is unavailing. To the extent the notice argument is intended to address her ability to provide contemporaneous consent to the bylaw before its adoption, the prior analysis of this issue is equally relevant here. To the extent that she intends to further argue that she cannot be bound because she did not receive notice or become aware of Bylaw 8.07's existence before she filed her lawsuit, a plaintiff's personal failure to read or become aware of changes made to the bylaws does not make the enforcement of the bylaw inequitable or unjust. That is particularly true here given that Defendants have demonstrated that the corporation publicly disclosed the amendment to the bylaws just three days after its adoption and several months before Plaintiff filed her lawsuit, and Plaintiff has not shown otherwise. The Court finds that to be reasonable notice to the shareholders, including Plaintiff, of the adoption of Bylaw 8.07.

Lastly, Plaintiff appears to rely on *Galaviz* and *In re Facebook* to support an argument that Bylaw 8.07 cannot bind her because it attempts to regulate claims that arose before its

adoption and before any consent had been provided. Beyond citing to those cases, however, she does not elaborate on why the adoption of a bylaw after the purported wrongdoing should render it unenforceable.

Courts are divided on how to handle the adoption of a forum-selection bylaw after the purported wrongdoing. Although the *Boilermakers* court did not specifically address the timing issue, it indicated that shareholders are bound by such bylaws once they are adopted and found that it is reasonable for a corporation to use a forum-selection clause to consolidate litigation into a single forum. *Boilermakers*, 73 A.3d at 953. The *Boilermakers* court nevertheless recognized that the facts of each case may determine whether the bylaw is situationally unenforceable. *Id.* at 958-63. Following *Boilermakers*, two courts have enforced a forum-selection clause adopted into the bylaws after the purported wrongdoing of the company. *See City of Providence v. First Citizens Bancshares, Inc.*, No. 9795-CB, 2014 Del. Ch. LEXIS 168, at *29-31 (Del Ch. Sept. 8, 2014) (holding that adoption of a forum-selection bylaw simultaneously with the announcement of a proposed merger or after some claims had arisen did not render the bylaw unenforceable); *Daugherty v. Ahn*, No. CC-11-06211-C, slip op., p. 1 (Tex. Cnty. Ct., Dallas Cnty. Feb. 15, 2013) (Doc. 25-5, PageID 991; Doc. 25-6, PageID 996-97) (granting motion to dismiss based on forum-selection bylaw despite an argument that the bylaw was adopted after wrongdoing).[5] Nevertheless, the district courts in *Galaviz* and *In re Facebook* weighed the fact that the amendment occurred (or became effective) after the alleged wrongdoing against enforceability in those particular cases. *Galaviz*, 763 F. Supp. 2d at 1171; *In re Facebook*, 922 F. Supp. 2d at 463. Two other post-*Boilermakers* decisions that rely on *Galaviz* similarly have suggested that an amendment after wrongdoing could be a basis for declining to enforce a forum-selection clause.

---

[5] The *Daugherty* decision did not provide any analysis on the issue, however.

11

*See Roberts v. TriQuint SemiConductor, Inc.*, No. 1402-02441, slip op., pp. 8-9 (Ore. Cir. Ct. Aug. 14, 2014) (declining to enforce a forum-selection bylaw that was adopted at the same meeting that the board recommended the merger in anticipation of the specific lawsuit that was filed shortly thereafter and noting that shareholders lacked any period of time to repeal the bylaw); *Miller v. Beam, Inc.*, No. 2014 Ch. 00932, Tr. of Oral Arg., pp. 45-46 (Ill. Cir. Mar. 5, 2014) (Doc. 25-1, PageID 905-06) (noting that the complaint contained no allegation of wrongdoing at the time the bylaw was created that would weigh against enforceability).

Upon considering the issue, the Court concludes that the forum-selection bylaw does not become unenforceable simply because it was adopted after the purported wrongdoing. The Court agrees with the *Boilermakers* court that a corporation may enact a forum-selection bylaw that is reasonable and fair, even in circumstances such as those presented here, for the purpose of consolidating litigation—particularly litigation brought on behalf of the corporation—into a single forum to reduce costs and prevent duplication. Not only would such consolidation be in the interests of the corporation, it also would be in the interests of shareholders to have the issues resolved efficiently and consistently. Moreover, as discussed above, binding a shareholder to such a bylaw is not unreasonable or unjust given that the shareholders were on notice at the time they purchased their shares in the Delaware corporation of the broad powers conferred upon the board to make, adopt, alter, amend, or repeal the bylaws from time to time.[6] As such, the Court

---

[6] The Delaware Court of Chancery recently rejected the argument that a forum-selection bylaw could not be enforced because it sought to regulate the forum for asserting claims that arose before it was adopted on the basis that the argument was a dressed-up version of the "vested rights" doctrine that previously had been rejected in Delaware and in particular by the Court of Chancery in *Boilermakers*. *City of Providence v. First Citizens Bancshares, Inc.*, No. 9795, 2014 Del. Ch. LEXIS 168, at *31 (Del. Ch. Sept. 8, 2014). The vested rights concept is not a new one, and previously has been acknowledged, and rejected, in Ohio under analogous circumstances. *See, e.g., Belden v. Union Cent. Life Ins. Co.*, 143 Ohio St. 329, 342 (1944) (recognizing that a provision of the state Constitution permitted the General Assembly to provide general laws for the formation of corporation and to make changes to the organization or structure of existing corporations, and because that provision was in effect when the appellants entered into his contract with the company, he had no vested right in the corporate structure and was presumed to know of that authority); *see also State v. Heys*, No. 09-cv-04, 2009 Ohio App. LEXIS 4561, at *6

does not find the fact that the claims arose primarily before the adoption of the bylaw to render that bylaw unenforceable.

### 2. Improper Purpose

Plaintiff appears to make several arguments that suggest Bylaw 8.07 should not be enforced because it was adopted for an improper purpose. The Court is not persuaded by those arguments.

First, Plaintiff again relies on *Galaviz* and *In re Facebook* to support an argument that a bylaw adopted after the purported wrongdoing should not be enforced. While that argument is addressed above in the context of consent, it is appropriately considered in the context of improper purpose as well. Nevertheless, as previously explained, the timing of adoption alone does not persuade the Court that an improper purpose existed. There must be something more than mere speculation of improper purpose based upon the timing.[7]

Second, Plaintiff argues that Bylaw 8.07 "discourages the pursuit of derivative claims by increasing the difficulty and costs of such litigation." That argument is conclusory, however, and is insufficient to demonstrate an improper purpose. The argument also focuses on the difficulty and costs of the litigation for an individual plaintiff proceeding on behalf of the corporation, fails to recognize that a shareholder derivative lawsuit already was filed in Delaware, and fails to recognize the cost and efficiency benefits that inure to the corporation and its shareholders by streamlining litigation into a single forum, even if it means having to incur some costs for discovery in Ohio or from Ohio-based witnesses.

---

(Miami App. Oct. 9, 2009) (holding criminal had no vested right or settled expectation in his criminal classification because there was no reasonable expectation it would not be subject to further legislation).

[7] It is noted that *Boilermakers* was decided on June 25, 2013, and Bylaw 8.07 was adopted just over one month later on August 2, 2013.

Likewise, Plaintiff's argument that the adoption of Bylaw 8.07 was a defensive maneuver aimed at protecting the Individual Defendants by "limiting the shareholders' ability to bring derivative actions" does not persuade the Court to set aside the forum-selection clause. Bylaw 8.07 does not insulate the Individual Defendants from suit; rather, it limits the forum in which shareholders may bring such an action. Plaintiff has not shown that shareholders would be precluded from bringing a shareholder derivative action in Delaware, and as mentioned previously, such an action currently is pending there.[8] Nor has Plaintiff provided any other information or explanation that would demonstrate how proceeding in Delaware courts would be unfairly advantageous to the interests of the Individual Defendants. Without more, the Court cannot conclude that Plaintiff met her burden of showing that the adoption of Bylaw 8.07 rose to the level of unfairness that makes it necessary to set the bylaw aside.

### 3. Seriously Inconvenient"

Plaintiff argues that forcing her to bring suit in Delaware is "seriously inconvenient." (Doc. 22, PageID 808). Plaintiff cites to the fact that she is an Illinois resident, she will be forced "to retain Delaware counsel," Chemed is headquartered in Ohio with several VITAS facilities in Ohio, and she will have to incur increased difficulty and costs. (*Id.*). A finding of serious inconvenience, however, must be based on more than the mere inconvenience of the party seek to avoid the clause. *Wong*, 589 F.3d at 829. Instead, it must appear that the enforcement of the clause would effectively deprive the plaintiffs of "a meaningful day in court." *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 722-23 (6th Cir. 2006) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 19 (1972)). The Sixth Circuit has previously held

---

[8] Of note is the Delaware Supreme Court's conclusion that even though "[l]egally permissible bylaws adopted for an improper purpose are unenforceable in equity[,]" the "intent to deter litigation . . . is not invariably an improper purpose" and "would not necessarily render [a] bylaw unenforceable in equity." *ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554, 560 (Del. 2014).

that a party does not satisfy this standard even where the clause was not negotiated, the plaintiffs were not sophisticated business entities, or the selected forum was in a foreign country where the possibility of a jury trial and a class-action suit was foreclosed. *Wong*, 589 F.3d at 829.

Here, the Court finds that Plaintiff has not met her "heavy burden" of showing that enforcing the forum-selection clause would be seriously inconvenient. She chose to purchase shares in the Delaware corporation, she provided the necessary consent and agreement to bind her to Bylaw 8.07, and she has not shown fraud, improper purpose, or other serious inequities as to proceeding in the District of Delaware that would weigh against enforcement of the bylaw. Indeed, those circumstances fail to even come close to the facts in *Wong* where the Sixth Circuit held the serious inconvenience prong had not been satisfied. As such, the Court finds the circumstances do not warrant setting aside Bylaw 8.07.

### B. Section 1404(a)

Once the Court determines whether the forum selection clause is enforceable, the Court must determine how to proceed. Here, Defendants have sought to transfer the case to the District of Delaware pursuant to 28 U.S.C. § 1404(a).

Section 1404(a) provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The United States Supreme Court recently has held that a "forum-selection clause may be enforced by a motion to transfer under § 1404(a)[.]" *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, 575 (2013).

Ordinarily, a district court considering a motion under section 1404(a) must "evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*

15

*Constr. Co.*, 134 S. Ct. at 581. The factors relating to the parties' private interests include "'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* at 581 n. 6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). The public-interest factors may include "'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* The Court also must consider the interests of justice, including judicial economy and the avoidance of inconsistent judgments. *See Waal v. AFS Techs., Inc.*, No. 1:14-cv-94, 2014 U.S. Dist. LEXIS 46666, at \*27 (W.D. Mich. Apr. 4, 2014) ("[T]he interest of justice factor (i.e., promotion of judicial economy, avoidance of inconsistent judgments) may be decisive in ruling on a transfer motion, even though the convenience of the parties and witnesses point in a different direction.") (internal quotations omitted); *see also Quality Gold, Inc. v. West*, No. 1:11-cv-891, 2012 U.S. Dist. LEXIS 70938, at \*6 (S.D. Ohio May 22, 2012) (similar to *Waal*); *Byerson v. Equifax Info. Servs.*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (same as *Waal*). The Court must, however, give weight to the plaintiff's choice of forum. *Atl. Marine Constr. Co.*, 134 S. Ct. at 581.

When the parties' contract contains an enforceable forum-selection clause, however, that forum-selection clause should be "'given controlling weight in all but the most exceptional cases.'" *Atl. Marine Constr. Co.,* 134 S. Ct. at 581. The section 1404(a) analysis therefore changes in three ways. First, "the plaintiff's choice of forum merits no weight." *Id.* The plaintiff instead bears the burden of showing why the court should not transfer the case to the selected forum. *Id.* at 582. Second, "a court evaluating a defendant's § 1404(a) motion to

16

transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* When parties are subject to a forum-selection clause, they "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* As such, the private-interest factors are weighed entirely in favor of the preselected forum. *Id.* The court may thus consider arguments about only the public-interest factors, although those factors "rarely defeat a transfer motion[.]" *Id.* Third, the section 1404(a) transfer of venue based upon a forum-selection clause "will not carry with it the original venue's choice-of-law rules[.]" *Id.*

Given that the Court has concluded above that the forum-selection clause is enforceable, it need not give Plaintiff's choice of forum any weight or consider the private interests. Instead, the Court must consider only the public interests at stake.[9]

The court congestion consideration is neutral in this case. While Plaintiff has shown that the docket of the Southern District of Ohio is less congested than the District of Delaware generally, there exists an earlier-filed action pending in the District of Delaware which would make consideration by that court more efficient.[10]

As to the localized nature of the case, Plaintiff is correct that there is a local connection to the case because Chemed is headquartered in Cincinnati, Ohio, at least four of the Individual Defendants reside in Ohio, Chemed's annual shareholder meetings were held in Ohio, shareholder inquiries were addressed in Ohio, its auditor issued financial reports in Ohio, and VITAS has multiple facilities in Ohio. The connections to Delaware are less significant. Yet, there are no considerations of local policy at issue in the case, the case is governed by Delaware,

---

[9] The parties do not dispute that the claim could have been properly brought in the United States District Court for the District of Delaware.

[10] Plaintiff also concedes that court congestion is a minor factor.

17

not Ohio, law, multiple Individual Defendants reside outside of Ohio, and VITAS, which is the subsidiary at the center of the case, is headquartered in Miami, Florida and has multiple facilities in sixteen states with its largest markets being Florida and California. The controversy thus extends well beyond the borders of Ohio. Accordingly, the Court does not find the local connections to the case to be so strong that the Court is compelled to keep the case here despite the forum-selection clause.

On the other hand, the Court finds that there is a strong interest in having the trial of this case in a forum that is at home with the applicable law. As mentioned above, Chemed is incorporated in Delaware and Delaware law applies to the claims asserted in the Complaint. It thus is within the public interest to have a court in Delaware decide this shareholder derivative action.

It further bears mentioning that the interests of judicial economy and the avoidance of inconsistent judgments weigh strongly in favor of transfer in this instance. As previously indicated, a shareholder derivative suit arising from the same core set of facts as are at issue in this case was filed first in the District of Delaware. While the Court recognizes that Plaintiff is displeased because the *KBC* action likely was filed in that venue because of the forum-selection clause, that does not change the fact that the plaintiff in the earlier-filed action could have challenged, as Plaintiff did here, the enforcement of the forum-selection clause in a different forum. It did not. Having the two cases decided in the same forum not only is the most efficient but it avoids inconsistent judgments on the same or a similar set of facts and claims.

Thus, in light of the foregoing analysis, the Court concludes that transfer under section 1404(a) pursuant to the forum-selection clause is proper and appropriate.

### III.  CONCLUSION

Consistent with the foregoing analysis, the Court hereby **GRANTS** Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. 13).  This case shall hereby be **TRANSFERRED** to the United States District Court for the District of Delaware.

**IT IS SO ORDERED.**

s/Michael R. Barrett  
JUDGE MICHAEL R. BARRETT  
UNITED STATES DISTRICT COURT